# CIRCUIT COURT OF THE CITY OF NORFOLK

Lavoris Sutherlin

v.

Wendell White,
Paul Warren,
and 5881 Chaucer Drive, L.L.C.

June 23, 2006

Case No. (Law) CH05-2065

BY JUDGE CHARLES E. POSTON

This case is before the Court upon the Defendants' limited demurrer to the Plaintiff's First Amended Bill of Complaint. The Defendants have demurred to the Plaintiff's claim that Defendant White owed the Plaintiff a fiduciary duty as an expert witness, to the Plaintiff's request for punitive damages against Defendant Warren for violating his fiduciary duty as the Plaintiff's attorney, and to all of the Plaintiff's other claims for punitive damages. The Court will sustain the first and second demurrers. Additionally, the Court will sustain the third demurrer with respect to Defendant Warren but will overrule the third demurrer with respect to Defendant White. The Court reserves ruling on the third demurrer with respect to the L.L.C.

*Facts on Demurrer*

In his First Amended Bill of Complaint the Plaintiff, Lavoris Sutherlin, alleged that Rochelle Harris hired Sutherlin, an architect, to build a home in New Kent County. Unfortunately, Harris never paid Sutherlin for his work on that home. Sutherlin then retained attorney Paul Warren, Esquire, a co-defendant, to bring a suit against Harris for the amount she owed Sutherlin. During the course of the litigation, Warren retained Wendell White, also a co-defendant, as an expert witness "familiar with construction quality and the ongoing litigation."

On April 8, 2005, Sutherlin, White, and Warren attended a settlement conference with Harris. At the conference, Harris offered to sell her home to Sutherlin for $588,000 if he released his claim against her. Believing this price to be well below the market value of the home, the three made plans to form an L.L.C., to be known as 5881 Chaucer Drive, L.L.C. This entity would purchase the house and sell it for a profit. Preliminary discussions indicated that White would provide the purchase money, Sutherlin would contribute his claim against Harris, and Warren would perform the necessary legal work. White would own 50% of the company while Sutherlin and Warren would each own 25%.

Ultimately, the three were unable to finalize the L.L.C. agreement. When the negotiations broke down, Sutherlin advised Warren that he wanted to abandon the settlement agreement and proceed with his original lawsuit against Harris. Warren told Sutherlin that he would no longer represent him in the underlying suit.

Meanwhile, White finalized the purchase of the property under the name of the L.L.C. and released Sutherlin's claim against Harris. He purchased the property for $588,000 and two weeks later contracted to sell it for $750,000. White now claims that he is the only member of the L.L.C. and denies that Sutherlin has any interest in the company or the expected profit from the sale.

Sutherlin brought this suit against White, Warren, and the L.L.C. seeking, among other forms of relief, an accounting, dissolution of the L.L.C., and awards of punitive and exemplary damages against the Defendants. The Defendants have filed a limited demurrer claiming that (1) White owed no fiduciary duty to Sutherlin as an expert witness; (2) as Sutherlin's attorney, Warren is not liable for punitive damages; and (3) none of the Defendants are liable for punitive damages.

*Analysis*

*Standard of Review*

A demurrer tests the sufficiency of factual allegations to determine whether the pleading states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on demurrer, the court may consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted).

*Breach of Fiduciary Duty*

Sutherlin's First Amended Bill of Complaint states "The actions of *White*, [sic] are a *breach of the fiduciary duty of White to Sutherlin as a member of an L.L.C.* in which both parties are purportedly members, and are a *breach of fiduciary duty of a servant to a master*" (emphasis in original). The parties agree that the prior segment alleges two claims: one based on the fiduciary duty members of an L.L.C. owe one another and the other based on the fiduciary duty owed by a servant to his master. The Defendants filed a demurer to the second claim because, they argue, Sutherlin did not create a master servant relationship by retaining White as an expert witness.

Normally, whether a person is an employee[1] or independent contractor is "a question of fact for a properly instructed jury." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 288, 377 S.E.2d 589, 594 (1989). However, if "the evidence admits of but one conclusion, the question is one of law." *Id.* As a result, the Court may examine Sutherlin's pleading to determine if the facts he alleged only support a finding that White was not Sutherlin's employee.

---

[1] "[T]he relationship of employer and employee is the same as that of master and servant." *Ideal Steam Laundry v. Williams*, 156 Va. 176, 179, 149 S.E. 479, 480 (1929) (internal quotations omitted).

Virginia Courts consider the following four factors in determining whether a master-servant relationship exists: "(1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual." *Atkinson v. Sachno*, 261 Va. 278, 284-85, 541 S.E.2d 901, 905 (2001). The fourth factor, the power to control, is determinative and separates an employee from an independent contractor. *Id.* "This factor refers to control over the means and method of performing the work." *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997). In contrast, an independent contractor is "[a] person who is employed to do a piece of work without restriction as to the means to be employed . . . and undertakes to do the work according to his own ideas . . . to whom the owner looks only for results." *Atkinson*, 261 Va. at 284, 541 S.E.2d at 905. Therefore, if the hiring party controls the manner in which the work is preformed, as opposed to ultimate result of the work, an employer-employee relationship exists.

In this case, the element of control necessary to establish a master-servant relationship is missing.[2] Sutherlin hired White to act as an expert witness in the area of construction and development who was "familiar with construction quality and the ongoing litigation." While Sutherlin certainly paid White for his services in the underlying litigation, Sutherlin lacked the power to control the manner in which White reached his conclusion.

In Virginia, absent an independent employment agreement, no party to litigation can exercise the level of control over an expert witness that an employer may exercise over an employee. "An expert may give an opinion based upon his own knowledge of facts disclosed in his testimony or he may give an opinion based upon facts in evidence assumed in a hypothetical question." *Walrod v. Matthews*, 210 Va. 382, 388, 171 S.E.2d 180, 185 (1969). Thus, an expert witness is expected to testify truthfully using his or her expertise as applied to a set of facts, not the instructions of a party to the litigation. *See* Va. Code Ann. § 8.01-401.1 (Michie 2000) ("In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances, or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify."); *cf. Bogush v. Bogush*, 29 Va. Cir. 308, 310 (Fairfax 1992) (Lee, J.) (finding that an expert witness's testimony was based on "faulty footing" and therefore could not be considered).

---

[2] The First Amended Bill of Complaint does not indicate how Sutherlin selected White, how he paid White, and what power of dismissal he had over White. Therefore, the Court will limit its discussion to the fourth and determinative factor.

Moreover, if a party could compel an expert witness to perform her duties in a certain manner, as opposed to the disinterested manner provided by the statutes and case law, the attorney who brooked such conduct would assuredly violate the rules of professional conduct. *See* Va. Sup. Ct. R., Part 6, § II, Rule 3.3(4) (prohibiting a lawyer from offering evidence that the lawyer knows to be false). Indeed, maintaining the independence of an expert witness is the chief reason why the common law has long recognized that an expert may not be paid with a contingency fee. Va. Sup. Ct. R., Part 6, § II, Rule 3.4, cmt. 3; *see Dupree v. Malpractice Research, Inc.*, 179 Mich. App. 254, 261, 445 N.W.2d 498, 501 (1989) (recognizing the concern that experts who testify on a contingency fee basis will become an advocate for the party, instead of a disinterested professional).

Clearly, White could not have been subject to Sutherlin's control because a party may not control an expert witness in the manner an employer controls an employee. Rather, the expert witness must apply her own professional judgment to the case and arrive at a conclusion independent from the party's wishes. Therefore, the Court finds that Sutherlin has failed to plead sufficient facts to establish that White was his employee. Indeed, based on the disinterested role an expert witness is expected to play at trial, the Court holds that merely retaining an individual to act as an expert witness is insufficient to create an employer-employee relationship.

Other jurisdictions have also determined that an expert witness is not a party's employee or agent. In *Taylor v. Kohli*, the Supreme Court of Illinois stated, "Excepting for fraud, the employer can influence but cannot control the expert's thought processes. Thus, the control element, so crucial to agency, is at all times missing." 162 Ill. 91, 96, 642 N.E.2d 467, 469 (1994). The Third Circuit, Louisiana, and Massachusetts have reached similar results. *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent."); *Cross v. Cutter Biological*, 676 So. 2d 131, 147-48 (La. App. 4th Cir. 1996) (finding no evidence of an agency relationship between an expert witness and a party to litigation); *Turner Falls, L.P. v. Board of Assessors of Montague*, 54 Mass. App. 732, 738, 767 N.E.2d 629, 634 (2002) ("In theory, the expert is not under the control of the party that presents him and, in theory, the expert testifies impartially to assist the trier of fact about matters not in common knowledge.").

*Punitive Damages*

*Warren's Liability for Punitive Damages as an Attorney*

Sutherlin's bill of complaint alleges that Warren is liable for punitive damages for breaching his fiduciary duties to Sutherlin as his attorney. The defense responds that the fiduciary duties arose from a contractual relationship and that, therefore, Sutherlin cannot collect punitive damages from Warren "in the absence of a willful independent tort." *O'Connell v. Bean*, 263 Va. 176, 180, 556 S.E.2d 741, 743 (2002).

In Virginia, a party must prove "an independent, willful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages, regardless of the motives underlying the breach." *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983). Sutherlin relies on *Anand v. Allison*, 55 Va. Cir. 261, 268 (Virginia Beach 2001) (Weckstein, J.), for the proposition that a party may recover punitive damages from a lawyer based on a breach of the attorney-client relationship. However, the Court finds that to the extent *Anand* holds that a client may recover punitive damages from a lawyer without proving an "independent, willful tort," it has been clearly overruled by the more recent case of *O'Connell v. Bean*, decided by the Supreme Court of Virginia.

In *O'Connell*, the Court considered whether Bean, the plaintiff, could recover punitive damages from her former attorney, O'Connell, on claims of a breach of the attorney's fiduciary duty and constructive fraud based on the attorney's misrepresentations of her ability competently to represent Bean in a divorce action. *Id.* The Court noted, "But for the contract, O'Connell would have had no duties to Bean. Whatever duties O'Connell owed Bean arose from their attorney-client relationship, which was created by their contract." *Id.* Thus, the Court determined that the claims, while sounding in tort, were actually for a breach of contract. *Id.* at 181, 556 S.E.2d at 743. As a result, Bean could not recover punitive damages from O'Connell because the torts she alleged were not willful and independent from the underlying contract. *Id.*

Clearly, in this case, Sutherlin cannot recover punitive damages from Warren for breach of his fiduciary duties as Sutherlin's attorney. As in *O'Connell*, one fiduciary duty Warren owed Sutherlin was based on their attorney-client relationship, created by their contract. Sutherlin's claim against Warren for a breach of that fiduciary duty, while sounding in tort, is essentially a contract claim, not an independent willful tort. Consequently, Sutherlin is not legally entitled to an award of punitive damages based on his claim against Warren for breaching his fiduciary duties as Sutherlin's attorney.

### The Defendants' Liability for Punitive Damages as Members of an L.L.C.

Finally the defense challenges Sutherlin's prayer for punitive damages against the Defendants for breaching their duties as members of an L.L.C. The defense contends that Sutherlin has alleged insufficient facts to support a finding of punitive damages on this claim. The Court agrees with respect to Warren but finds that Sutherlin has pleaded sufficient facts to show that White may be liable for punitive damages. Finally, the Court reserves ruling on whether the L.L.C. may be liable for punitive damages.

In Virginia, punitive damages are only available upon a showing "that the defendant's acts were 'so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct'." *Bowers v. Westvaco Corp.*, 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992) (*quoting Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988)). To prove willful or wanton conduct, a plaintiff must show that the defendant "was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct." *Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990) (internal quotations omitted).

The bill of complaint alleges that Warren was Sutherlin's lawyer during the negotiations surrounding the settlement of Sutherlin's claim against Harris and the formation of the L.L.C. The complaint alleges that Warren abandoned Sutherlin during those negotiations and that White later unscrupulously took advantage of Sutherlin. Certainly, the bill of complaint alleges numerous breaches of the rules of professional responsibility and a breach of whatever fiduciary duties Warren owed Sutherlin both as an attorney and as a co-member of an L.L.C. However, the pleading does not allege that Warren's actions evinced an intent to harm Sutherlin; nor does it allege that Warren, upon withdrawing as Sutherlin's counsel, knew or should have expected that White would take advantage of Sutherlin. Rather, the pleading only alleges that Warren behaved negligently in representing Sutherlin and that Warren's poor performance left Sutherlin vulnerable to White. The Court, then, sustains the Defendants' demurrer to Sutherlin's request for punitive damages against Warren for violating his fiduciary duties to Sutherlin as a member of an L.L.C.

On the other hand, the pleading does allege sufficient facts to show that White may be liable for punitive damages. The pleading claims that White purchased the property in part with his own money and in part by relinquishing Sutherlin's claim against Harris. Later, White proposed to sell

the property at a substantial profit. Moreover, White now claims that Sutherlin has no interest in the L.L.C. and that, therefore, White is entitled to all the profits from the sale. In effect, Sutherlin has alleged that White breached his fiduciary duty to Sutherlin by converting Sutherlin's property, his claim against Harris, without ever providing Sutherlin with compensation for that valuable interest. As a result, the Court finds that Sutherlin has sufficiently pleaded facts that White acted willfully and with conscious disregard for Sutherlin's rights. Therefore, Sutherlin may seek punitive damages from White, and the demurrer to Plaintiff's prayer for punitive damages from White is overruled.

Last, the Court must consider whether Sutherlin may collect punitive damages from the L.L.C. The theory of liability upon which Sutherlin seeks to hold the L.L.C. liable remains unclear. He only states that the actions taken in the L.L.C.'s name suffice to hold all Defendants liable for punitive damages. However, the claims he has alleged, breaches of fiduciary duties, are not capable of being committed by an L.L.C. The Court has difficulty in imagining how the L.L.C. could be held vicariously liable on any of these claims. Nonetheless, the Court reserves ruling on this claim pending further argument from the parties.

*Conclusion*

In sum, the Court finds that, when Sutherlin retained White as an expert witness, he created no employer-employee relationship because the element of control, necessary to such relationships, was lacking. The Court also holds that Warren may not be liable to Sutherlin for punitive damages for breaching the fiduciary duties that arose from their attorney-client relationship or from their relationship as members of an L.L.C. In contrast, the Court finds that White may be liable to Sutherlin for punitive damages arising from his breach of fiduciary duty as a member of an L.L.C. Finally, the Court reserves ruling on whether the L.L.C. may be liable to Sutherlin for punitive damages.